### 6011.   THURMAN *v.* SMITH.

1. Where one is discharged from custody on his petition in a trover and bail case, containing the averments required by statute, and the case is brought to this court on exception to the judge's discharging the defendant, and the evidence on which the order was based is not set out in the record, the presumption of law is that the lower court had sufficient evidence to warrant the conclusion that the petitioner could neither give the security required by law nor produce the property sued for, and that the reasons for the non-production of the property were sufficient.

2. Where the judge of the court in which a bail-trover proceeding is pending orders the discharge of the defendant from imprisonment, and at the same time requires that he shall give a bond, and he does execute a bond, which is accepted, and by virtue of which he is released from custody, and at the trial of the main case he fails to put in an appearance, but the case is tried and an alternative verdict returned against him, the court may enter thereon such judgment as the verdict authorizes and as is warranted by the bond given under the order of the court, but the defendant can not be rearrested or again incarcerated while the original judgment discharging him from custody remains of force and has not been set aside by that court or by the reviewing court.

3. There was no error requiring a reversal of the judgment of the court below.
DECIDED JUNE 28, 1915.

Trover; from city court of Nashville—Judge Christian. October 3, 1914.

*R. Eve, Hendricks & Hendricks,* for plaintiff.

*W. R. Smith, William Story,* for defendant.

WADE, J.   Thurman sued out bail-trover against Smith, to recover a diamond ring to which he held title under a bill of sale to secure the payment of $210. Smith was taken into custody by the sheriff upon his failure to surrender the property sued for or to give bond for the eventual condemnation-money, and thereupon

filed his application for discharge under the provisions of section 5154 of the Civil Code; and at the hearing the evidence disclosed that the defendant did not have the ring in his possession, custody, or control at the time the trover proceeding was filed and the bail affidavit made, that it was not then or afterwards in his power to produce the property, and that from poverty he was unable to give the bond required by law. At the close of the evidence the trial judge announced that he would discharge the defendant from custody; and thereupon, before this judgment was formally signed or entered, the plaintiff presented his exceptions pendente lite, together with a properly executed bond for $300, payable to the plaintiff and conditioned upon the payment of the eventual condemnation-money and all subsequent costs, and asked for a supersedeas. The court passed an order reciting that the plaintiff had in due form filed his exceptions pendente lite and had given bond in the sum of $300 to supersede the judgment, order, and decree of the court, and to pay the eventual condemnation-money in the case, and that the offer to give the said bond and the request for a supersedeas were both made while the defendant was in the custody of the officers of the court, after the judge had orally announced his finding but before it was written out and reduced to judgment; and the court thereupon ordered that the defendant Smith should give "a good and solvent bond in the sum of $200, to be and appear at the May term, 1914, of this court and remain from term to term and day to day thereto to answer the final judgment, order and decree of this court;" and, "in default thereof, that he be remanded to the common jail of said county and there kept until the further order of this court or until the final determination of this case."

It appears from the record, that the petition for discharge was filed by the defendant on March 24, 1914, and that on April 15, 1914, the court passed the following order: "Upon satisfactory evidence being adduced that the movant in the foregoing petition can not produce the goods mentioned therein, nor give the bond and security as required by law, and satisfactory reasons for the non-production of said goods being shown to the court, it is hereby ordered and adjudged that the movant, J. C. Smith, be and he is hereby discharged from custody;" that the order above mentioned which recites the giving of a bond for $300 by the plaintiff to

supersede the judgment of the court, etc., which further required the defendant "to give a good and solvent bond in the sum of $200, to be and appear at the May term, 1914," of said court, "to answer the final judgment" of the court, was entered during the April term, 1914, on "this ——— day of ——————— 1914;" that the exceptions pendente lite complaining that the court erred in entering up the judgment discharging the defendant from custody on April 15, 1914, were certified to by the judge on May 5, 1914, and filed in court on the same day; that on May 11, 1914, the defendant, J. C. Smith, as principal, and W. M. Register Jr., as security, entered into a bond payable to the Governor of Georgia and his successors in office "in the penal sum of $250," which declared that the condition of the obligation was "that if the above bound J. C. Smith shall personally be and appear in the city court of said county on the third Monday in August, 1914, and from day to day, and term to term, then and there to answer to the offense of mis——— and shall not depart thence without leave of said court, then the above obligation to be null and void, else to remain in full force and virtue." This bond recites that it is "signed, sealed, and delivered in the presence of," but does not appear to have been attested by any person.

The case came on regularly at the August term, 1914, of the city court of Nashville, and the defendant failed to appear personally, as required in his bond, but by his attorney made an appearance and filed a plea of general issue in the case. The case proceeded and the plaintiff tendered in evidence, without objection, an instrument executed by the defendant to the plaintiff, which was dated November 15, 1910, and which recited that "to secure two promissory notes of even date herewith, maturing respectively December 15 and January 1 after date, for $100 and $110 each, I hereby sell, transfer, and convey one diamond ring of the value of $425, being 25/8-32, and being the property of said J. C. Smith, to L. P. Thurman. In the event said notes are not paid at maturity, the said L. P. Thurman shall have the right, and he is hereby authorized, to seize said property and appropriate the same to his own use;" signed by J. C. Smith.

There was testimony that prior to the filing of the suit the plaintiff made personal demand on the defendant for the return of the diamond ring, and the defendant then stated that he could not

pay the plaintiff therefor or return the ring to him, for the reason
that he had previously hypothecated it with the Citizens Bank of
Valdosta for a loan of $225. There was testimony from one Coch-
ran to the effect that he had sold to the defendant the diamond ring
described in the defendant's bill of sale to the plaintiff, dated No-
vember 15, 1910, and that on April 5, 1915, he repossessed himself
of the said ring, as the defendant had not paid him the purchase-
price thereof; and that in order to regain possession of the ring, it
had been necessary for him to pay $226.30 in cash to the Citizens
Bank of Valdosta, Georgia, which then held possession of the ring.
The jury returned the following verdict: "We, the jury, find for
the plaintiff $425 and the property in dispute, the $425 to be dis-
charged upon the surrender of the property to the plaintiff." There-
upon counsel for the plaintiff presented to the court a judgment,
which was signed by the court, ordering and adjudging that the
plaintiff "do have and recover of J. C. Smith, the defendant therein,
the sum of $425, and the further sum of $———— costs of suit,
which said judgment may be discharged upon the delivery of the
property in controversy to the plaintiff within 20 days from this
date. This Sept. 3, 1914." The judgment as presented to the
court also contained the following additional words and provi-
sions: "It is further ordered, considered, and adjudged by the
court that inasmuch as the plaintiff filed affidavit for bail in the
above-entitled case, and the defendant having neglected and refused
to give said bond, and the jury having returned a final verdict in
the case, it is the further judgment of the court that the sheriff of
Berrien county, Ga., arrest the said J. C. Smith and confine him
in close and safe custody in the common jail of said county upon
his failure or refusal to pay the judgment herein, or to return the
property described in the plaintiff's declaration, and to continue to
hold the said J. C. Smith, as aforesaid until the further and final
order of this court. The arrest of the said J. C. Smith is not to
be made until after a period of ———— days from the date of this
judgment, order, and precept, and it is so ordered;" but the judge
declined to sign the latter part of the judgment, and this is as-
signed as error, on the following grounds: (*a*) That since the court
required a bond of the defendant to be and appear at the trial of
the case, "to answer the final judgment, execution and decree of
the court, his failure and refusal to appear and abide the terms and

conditions in his bond and the order and judgment of the court entitled plaintiff to a judgment requiring defendant to be held as herein set forth." (b) "The plaintiff, having obtained a final judgment before the court and jury, was entitled to a judgment of the court requiring the sheriff of Berrien county to take the defendant in custody, as set forth and contained in the judgment presented to the court and by the court refused." (c) "Because the court, upon the petition of the defendant for bail upon his own recognizance, from the evidence, reached the conclusion that the defendant was unable to give the bond required; the result of the bail-trover proceeding is to permit the defendant to acquire the property of the plaintiff and thereafter purposely and designedly dispose of the same to the loss and injury of the plaintiff in the value thereof." (d) "Because to discharge the defendant on the bond required by the court, which he gave, and, after final judgment before the court and jury, for the court in his judgment, order, and decree to refuse to require the defendant to comply with the judgment or the obligations in his said bond is equivalent to holding that the action of bail-trover against an insolvent person is incapable of enforcement and is a farce."

Section 5154 of the Civil Code provides that where a defendant in any action for the recovery of personal property in which bail is required shall be held in imprisonment by reason of his inability to give security, he may present his verified petition in writing to the judge of the court in which the suit is pending, in which he shall state that he is neither able to give the security required by law nor to produce the property, and can furnish satisfactory reasons for its non-production, and traverse the facts stated in the plaintiff's affidavit for bail; and at the hearing, after the notice provided by law, if the judge shall find from the evidence presented that the petitioner can neither give the security nor produce the property, and the reasons for its non-production are satisfactory, the petitioner shall be discharged upon his own recognizance, conditioned for his appearance to answer the suit, but otherwise the judge shall commit him to custody. The record in this case discloses that a petition was filed in accordance with the provisions of this section, and at the hearing the defendant was discharged from custody, but upon what evidence the judge based his order of discharge does not appear; and hence we must assume that there was

at the hearing of the application for discharge ample evidence to establish the facts that the petitioner could neither give the security nor produce the property; and we must further conclude that the reasons presented for the non-production of the property were entirely satisfactory to the court.

Section 5155 of the Civil Code provides that in any case where a defendant in an action of trover and bail shall present a petition for discharge from imprisonment under the provisions of section 5154, supra, it shall be lawful for either party dissatisfied with the decision rendered to except thereto by writ of error at any time within twenty days from the rendition of the decision complained of. In *Marks* v. *Hertz*, 65 *Ga.* 119, the Supreme Court said, that where a defendant in trover was arrested under bail process and moved for a discharge, an order discharging him on his own recognizance was not such a final judgment as could be brought up by writ of error, but the proper remedy was by exceptions pendente lite; and that, if the ruling would work serious or irreparable injury before the termination of the case, to the party against whom it was made, the court, on a bill of exceptions pendente lite, should grant a supersedeas until the final disposition of the main case.

The Supreme Court said, in *Gustoso Cigar Manufacturing Co.* v. *Ray*, 117 *Ga.* 565 (43 S. E. 984), that "where a defendant in bail-trover proceedings has been discharged under the Civil Code, § 4608 [Civil Code 1910, § 5154], the order of discharge can only be superseded by the plaintiff giving bond and complying with such other conditions as may be properly imposed." In that case the Supreme Court said that when the lower court "found that the defendant was entitled to his discharge, that judgment was conclusive until reversed, and should have been enforced unless superseded;" and further it was said that if the plaintiff "had immediately given notice of its intention to present a bill of exceptions and asked for time to supersede the order, the court would have allowed time in which to file the same, . . and the question would then have been raised as to what should be the terms and conditions of a supersedeas in bail-trover." It appears from the record in that case that, the trial judge having ordered that the defendant be discharged from custody upon his own recognizance, and the plaintiff having applied for a supersedeas order until that judgment could be reviewed by the Supreme Court, it was ordered

that the order for the discharge of the defendant be not executed until the case should be passed upon by the Supreme Court, and that in the meantime the defendant be committed to jail; and that from thence he might be discharged "upon his entering into good and sufficient bond in the sum of seven hundred dollars, conditioned for his appearance to answer and abide the judgment of the court." The defendant gave the bond required for his appearance in the terms prescribed by the order, and the plaintiff excepted to the order of discharge and to so much of the supersedeas order as allowed the defendant to give a $700 bond, insisting that the defendant should have remained in custody until the termination of the case. There was no offer on the part of the plaintiff to give bond for damages, as in the case of *Southern Express Co.* v. *Lynch,* 65 *Ga.* 240, or even to comply with section 5552 of the Code of 1895 [Code of 1910, § 6165], and the court held that since there was no notice even of an intention to present a bill of exceptions, and the court was not asked for time to supersede the order, the bond exacted of the defendant was as much as the company had the right to ask. In the *Lynch* case, supra, it was held that the judge, in granting the supersedeas, could require a proper bond or prescribe "such terms as the nature of the case might require." See also *Montgomery* v. *King,* 125 *Ga.* 391 (54 S. E. 135). In *Ragan* v. *Chicago Packing Co.,* 93 *Ga.* 712 (21 S. E. 143), it was said, that "under the act of 1879 (Code, § 3420a), touching the liberty of the citizen in proceedings requiring bail in actions for the recovery of personal property, while no discharge is warranted unless the reasons shown for the non-production of the property are satisfactory, it is not requisite that an existing physical impossibility to produce the property should be the result of misadventure or of blameless conduct on the part of the defendant, but if it existed at all when the process was sued out, and continues to exist without any fault or misconduct committed by the defendant since that time, it should be deemed satisfactory. Inasmuch as by section 3418 of the code a plaintiff, in order to require bail, must make affidavit 'that the property is in the possession, custody or control of the defendant,' anything which shows with full certainty that this affidavit was not true in fact should be deemed a satisfactory reason for not producing the property, unless it affirmatively appears that since the plaintiff's affidavit was made, the

34

defendant has acquired the power to produce it." In *Garrett* v. *Underwood,* 102 *Ga.* 558 (27 S. E. 665), it was held: "Where a defendant, imprisoned under an action of trover where bail was required, petitioned the judge of the court in which the suit was pending, for his discharge, and it satisfactorily appeared that he was unable to produce the property or to give security for the eventual condemnation money, there was no error in discharging the defendant on his own recognizance and awarding the cost of the proceeding against the plaintiff." In *Shinholser* v. *Jordan,* 115 *Ga.* 462 (41 S. E. 610), it was held: "It must appear to the judge to whom such petition is addressed that the defendant can neither give the security nor produce the property, and that the reasons for its non-production are satisfactory." In the earlier case of *Harris* v. *Bridges,* 57 *Ga.* 407-409 (24 Am. R. 495), it was held that the inability of the defendant to produce the property would not authorize his discharge, since the statute *then* in force did not make this one of the grounds for such discharge.

It will be noted that in the case of *Gustoso Cigar Co.* v. *Ray,* supra, the Supreme Court does not in terms decide how far the judge hearing an application for discharge in a bail-trover case may exercise his judgment in determining the nature of the bond to be required of the defendant for the protection of the interest of the plaintiff, where the defendant is discharged from custody on the ground that he can neither give the bond required by law nor produce the property. In the case under consideration the order of the judge required the defendant to give bond in the sum of $200, conditioned for his appearance at the May term, 1914, of the court in which the proceeding was pending, and to appear from term to term and day to day to answer the final judgment, order, and decree of the court, and in default thereof that he should be remanded to the common jail of the county and there kept until further order of the court; whereas the bond given, though it requires the appearance of the defendant in the proper court at the proper term and from day to day and from term to term, does not require him to answer the "final judgment, order, and decree of the court," but to answer to "the offense of mis————"; and while requiring that he shall not depart thence without leave of the court, it nowhere binds him to answer to the final judgment, order, and decree of the court in the pending case. It appears that the order or judg-

ment, since it required the defendant to answer to the final judgment in the case, was intended to exact an eventual condemnation bond for $200; whereas the bond actually given was not payable to the plaintiff in the case for the eventual condemnation money, but was payable to the Governor of the State of Georgia, and seems to have been a criminal bond only, requiring the presence of the accused to answer to the "offense" of a misdemeanor.

In view of the present provision of the statute authorizing the discharge of a defendant in bail-trover from the custody of the officer where he fails to produce the property and is unable to give the bond required by law, and presents to the court satisfactory reasons for the non-production of the property, the judge would have been without authority to render the judgment which he declined to sign, requiring the sheriff to arrest the defendant and confine him in close and safe custody in the common jail upon his failure or refusal to pay the judgment rendered on the trial of the main case, or to return the property described in the plaintiff's petition, and to continue to hold the defendant until further order of the court. The court had already passed upon the question whether the defendant should be properly discharged under the showing made at the hearing of his petition; and, while exceptions pendente lite were filed by the plaintiff, and all the rights of the plaintiff were thereby preserved, and the propriety and legality of the order of discharge could be reviewed in this court by bill of exceptions on the final determination of the case; unless it appeared that the lower court was not authorized to discharge the defendant under the evidence adduced at the hearing of his application for discharge, this court would not be authorized to set aside the order of the judge; nor would the trial judge himself thereafter, and while his original order discharging the defendant was still of force and not set aside, be authorized to enter up a further judgment exactly contrary to and altogether nullifying the judgment previously rendered by him on the application for discharge. The judge therefore did not err in declining to direct the sheriff to seize the defendant and incarcerate him upon his failure or refusal to pay the judgment or return the property described in the plaintiff's declaration, until the further order of the court.

Imprisonment for debt has long since been generally abolished, and no further discussion of the proposition here involved is neces-

sary. The plaintiff, of course, could have obtained any judgment on the bond given by the defendant which might have been authorized by its express terms. Had the bond been the condemnation-money bond usually required in bail-trover cases, judgment for the condemnation money might have been entered up thereon against the defendant and his security, but since the bond actually given appears simply to have been an appearance bond, no judgment could be entered upon it for the amount of the verdict recovered against the defendant. Whether the defendant violated the order of the court in giving a bond apparently different from that required by the order, or whether the officer who presumably accepted this bond and released the defendant thereon might be liable in any way to the plaintiff, are questions we need not consider, but it is clear that the original order requiring the $200 bond, and the bond actually given, for $250, for the appearance of the defendant to answer to some offense, would not either or both authorize the rendition of the judgment which the court refused to sign. The plaintiff complains that if a defendant in a bail-trover action may release himself from custody by simply showing that he did not have the property in his possession at the time the trover suit was instituted, and that he is unable to give security or to now produce the property, the remedy offered by bail-process would practically be nullified. It may be said in answer to this that no plaintiff is entitled to this remedy, unless he makes an affidavit that the property is in the possession, custody, and control of the defendant; and if in point of fact this affidavit is untrue when made, and the defendant makes the fact appear when he seeks his discharge from arrest, the plaintiff certainly has no right to complain. If he ascertained the facts before making his bail-affidavit, and the affidavit itself spoke the literal truth as to the actual possession of the property by the defendant at the time the affidavit was made, then, on proof of the fact of possession on the hearing of a petition for discharge brought by the defendant, the court should remand the defendant to the custody of the officer, unless he parted with the possession after process was sued out, without any fault or misconduct on his part. Without meaning to apply the remark to this case, it is too often true that bail-affidavits are made in trover actions alleging that the defendant is in possession of the property sued for, when the affiant knows that the

defendant has already parted with his possession, and the plaintiff nevertheless institutes the bail action in the hope that the defendant will give the eventual condemnation bond, or perhaps pay the value of the property sued for, rather than incur the humiliation of arrest and incarceration in jail until the necessary ·five-days notice can be given to the plaintiff of his intention to apply for a discharge, and until the petition for discharge can thereafter be heard and determined. Of course, many such actions are instituted where the person making the affidavit knows simply that the defendant was at some time in the recent past in possession of the property sued for, and relies on the presumption that possession once known to exist continues until the contrary is shown; but in such cases, where the affiant has no actual knowledge that the defendant has already parted with the possession of the property and acts on this presumption in entire good faith, he must nevertheless run the risk of failing to obtain the benefit of the bail proceeding, should it appear at the hearing of an application for .discharge that the defendant had in fact parted with the possession of the property before the suit was instituted, or, in other words, should the defendant rebut the presumption referred to above.

*Judgment affirmed.*